NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOAN FARESE, | : |
| Plaintiff, | : Civ. No. 03-2501 (GEB) |
| v. | : **MEMORANDUM OPINION** |
| AVAYA, INC.; THE AVAYA INC. PENSION PLAN FOR SALARIED EMPLOYEES; ABC COMPANIES 1-10; AND JOHN DOES 1-10, | : |
| Defendant. | : |

**BROWN, District Judge**

This matter comes before the Court upon Defendants Avaya Inc. ("Avaya") and the Avaya, Inc. Pension Plan for Salaried Employees' ("the Avaya Plan") (collectively referred to as "Defendants") motion for summary judgment pursuant to Fed. R. Civ. P. 56. The Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367. The Court, having considered the parties' submissions and having heard oral argument from counsel on August 23, 2004, and for the reasons discussed below, will grant Defendants' motion.

**I. BACKGROUND**

This action arises from the termination of Plaintiff Joan Farese's ("Farese") employment by Defendant Avaya, Inc. ("Avaya"). See Certification of Kevin C. Donovan in Support of Defendants' Motion for Summary Judgment and for Attorney's Fees ("Donovan Cert.") Exh. A,

Plaintiff's Complaint ("Compl.") ¶ 9.  Farese alleges that Avaya discharged her to avoid paying enhanced pension benefits that would have become available to her in the future, in violation of Section 510 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1140 (2004), and in breach of its fiduciary duties under ERISA.  Compl. ¶ 26-31.  Plaintiff also asserts several New Jersey common law claims based on her discharge, including: (1) violation of public policy,[1] (2) wrongful discharge, and (3) breach of the implied covenant of good faith and fair dealing.  Compl. ¶ 32-42.

Farese became a manager in Avaya's Human Resources ("HR") Department in October 1, 2000 following Avaya's spin-off from its parent company, Lucent Technologies, Inc. ("Lucent"). Plaintiff's Response to Defendants' Statement of Undisputed Material Facts ("Pl. R. 56.1 Stmt.") ¶ 1.[2]  Although the parties dispute the exact date upon which Farese was notified of her impending discharge, it is undisputed that Farese was discharged by her supervisor, Sonali Dighe ("Dighe"), effective May 31, 2001.  Id. at ¶ 1, 48.  During the entirety of her tenure at Avaya, Farese was aware of her status as an at-will employee.  Id. at ¶ 85, 91.  In addition, Farese acknowledged that numerous Avaya internal documents, including documents reviewed by Farese and produced by her own Avaya HR Department, contained explicit disclaimers advising employees that Avaya plans, manuals, and policies should not be construed to create an express or implied contract for continued or term employment.  Id. at ¶ 86-91.

---

[1]In Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp."), Farese conceded that "Count III alleging violation of public policy is founded upon ERISA violations and is preempted."  Pl. Opp. at p. 24. Therefore, this claim is dismissed.

[2]The Court has primarily relied on the facts as contained in Pl. R. 56.1 Stmt., in which plaintiff incorporates, and separately addresses, each of the allegations contained in Defendants' Statement of Undisputed Material Facts ("Def. R. 56.1 Stmt.").

On June 6, 2001, six days after Farese's discharge, Lucent announced a plan to reduce its workforce by offering voluntary early retirement packages. Id. at ¶ 60. It is undisputed that Lucent's announcement of enhanced pension benefits prompted Avaya to consider formulating a similar plan to reduce its workforce by offering enhanced pension benefits. Id. On June 12, Avaya's Board of Directors approved a plan offering employees enhanced pension benefits to encourage early retirement ("the Voluntary Offer"). Id. at ¶ 58, 63. Under the terms of the Voluntary Offer, an Avaya employee had to be actively employed as of June 5, 2001 in order to be eligible for the enhanced benefits. Id. at ¶ 64. Since Farese was not on the Avaya payroll as of June 5, 2001, she was not eligible for benefits under the Voluntary Offer. Id. at ¶ 67.

Following her discharge, Farese filed a timely claim for benefits under the Voluntary Offer with the Avaya Plan Administrator ("the Administrator"). See Compl. ¶ 22. On November 2, 2001, the Administrator denied Farese's claim because she was "notified of . . . her Termination of Employment for performance reasons on or before June 5, 2001." Id. at ¶ 23. Farese then appealed the Administrator's decision to the Avaya Inc. Employee Benefits Committee ("the Committee"), "acting in its capacity as the final review Committee for claims arising under [the Avaya Plan]." Donovan Cert. Exh. C. at 00506; see also Compl. ¶ 24. On March 20, 2002, the Committee denied Farese's appeal for eligibility for benefits under the Voluntary Offer, holding that Farese was not a "Covered Employee on June 5, 2001 since [her] termination of employment date was May 31, 2001." Donovan Cert. Exh. C. at 00506. The Voluntary Offer defines a "Covered Employee" as an employee "who on June 5, 2001, is actively employed by [Avaya], receiving benefits under the short-term disability plan, or on an approved leave of absence." Id.

## II. DISCUSSION

### A. STANDARD FOR MOTION FOR SUMMARY JUDGMENT

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir. 1996); Healy v. New York Life Ins. Co., 860 F.2d 1209, 1219, n. 3 (3d Cir. 1988), cert. denied, 490 U.S. 1098 (1989); Hersh v. Allen Prod. Co., 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the Court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir. 1987).

Rule 56(e) of the Federal Rules of Civil Procedure provides, in relevant part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). The rule does not increase or decrease a party's ultimate burden of proof on a claim. Rather, "the determination of whether a given factual dispute requires submission to

a jury must be guided by the substantive evidentiary standards that apply to the case." Anderson, 477 U.S. at 255-56.

Under the rule, a movant must be awarded summary judgment on all properly supported issues identified in its motion, except those for which the non-moving party has provided evidence to show that a question of material fact remains. See Celotex, 477 U.S. at 324. Put another way, once the moving party has properly supported its showing of no triable issue of fact and of an entitlement to judgment as a matter of law, for example, with affidavits, which may be "supplemented . . . by depositions, answers to interrogatories, or further affidavits," id., "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586, n.12; see also Anderson, 477 U.S. at 247-48 ("[B]y its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion . . . the requirement is that there be no *genuine* issue of *material* fact.") (emphasis in original).

What the non-moving party must do is "go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324; see also Lujan v. National Wildlife Fed., 497 U.S. 871, 888 (1990) ("The object of [Rule 56(e)] is not to replace conclusory allegations of the complaint . . . with conclusory allegations of an affidavit."); Anderson, 477 U.S. at 249; Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992) ("To raise a genuine issue of material fact . . . the [non- moving party] need not match, item for item, each piece of evidence proffered by the movant" but rather must exceed the 'mere scintilla' threshold.), cert. denied, 507 U.S. 912 (1993). Here, the material facts are

5

undisputed, and thus, the matter is ripe for summary judgment.

    **B.**  **FARESE'S CLAIMS AGAINST THE AVAYA PLAN MUST BE DISMISSED**

  Farese's claims against the Avaya Plan constitute an appeal of its decision denying her coverage under the Voluntary Offer. The Avaya Plan held that Farese was not a "Covered Employee on June 5, 2001 since [her] termination of employment date was May 31, 2001." Donovan Cert. Exh. C. at 00506. "Decisions of ERISA fiduciaries generally merit deference from courts." Romero v. SmithKline Beecham, 309 F.3d 113, 118 (3d Cir. 2002). This court will not upset the Avaya Plan's determination that Farese does not fall within the Voluntary Offer's definition of "Covered Employee." Accordingly, all claims against the Avaya Plan must be dismissed.

    **C.**  **FARESE'S CLAIMS AGAINST AVAYA MUST BE DISMISSED**

    1.  Farese's ERISA Claims

      a.  *Farese's Claim Under Section 510 of ERISA*

  Farese claims Avaya terminated her employment prior to approving the Voluntary Offer in order to avoid paying her the enhanced pension benefits available subsequent to the Voluntary Offer's approval. Section 510 of ERISA states that it is unlawful for an employer to discharge an employee "for the purpose of interfering with the attainment of any right to which such participant may become entitled . . ." 29 U.S.C. § 1140 (2004). In Gavalik, the Third Circuit concluded that the burden shifting analysis utilized in Title VII cases (see McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1981)) is equally appropriate for cases brought under Section 510 of ERISA. See Gavalik, 812 F.2d 834, 852 (3d Cir. 1987), cert. denied, 484 U.S. 979 (1987). "To establish a prima facie case under Section 510, the plaintiff must demonstrate (1) prohibited

employer conduct (2) taken for the purpose of interfering (3) with the attainment of any right to which the employee may become entitled." Id. at 852. If the plaintiff successfully proves the three elements of a prima facie case under Section 510, the burden of production shifts to the employer to offer a legitimate, non-discriminatory reason for its actions. See Eichorn v.AT&T Corp., 248 F.3d 131, 149 (3d Cir. 2001). Therefore, in order to succeed Farese must first establish that Avaya discharged her for the purpose of interfering with her attainment of enhanced pension benefits.

"The essential element of proof under § 510 is specific intent to engage in proscribed activity." Gavalik, 812 F.2d at 851. A plaintiff can satisfy the evidentiary burden by introducing circumstantial evidence of specific intent. Id. at 852. Farese, however, has not offered any circumstantial evidence that Avaya discharged her with the specific intent to deprive her of enhanced pension benefits. In fact, Farese has offered no evidence that Avaya even had begun to contemplate the Voluntary Offer at the time of her dismissal.

The cases that Farese relies upon clarify the quality and kind of circumstantial evidence of intent necessary to avoid summary judgment. See Eichorn, 248 F.3d at 150 (discussed below); Turner v. Schering-Plough Corp., 901 F.2d 335, 348 (3d Cir. 1990) (holding that circumstantial evidence that "the [plaintiff's] termination deprived him of the opportunity to accrue additional benefits" was insufficient to establish a prima facie case in the absence of additional evidence suggesting a pension-defeating motive); Gavalik, 812 F.2d at 865 (holding that summary judgment is inappropriate where the court finds that the employer instituted a plan at least partially motivated by a desire to prevent the plaintiffs' from attaining pension eligibility). For example, the Third Circuit in Eichorn held that the plaintiffs had established a prima facie case

under Section 510.³  See Eichorn, 248 F.3d at 150.  In Eichorn, the Section 510 claim arose out of Lucent's sale of Paradyne, a former AT&T affilate engaged in the manufacture of network access products for the telecommunications industry, to Texas Pacific Group.  Id. at 136-37.  As a condition of the sale, Lucent agreed, on behalf of itself and AT&T, its' former parent company, that it would not seek to hire any Paradyne employee or consultant with a salary exceeding $50,000 for eight-months ("the no-hire agreement").  Id. at 137.  This no-hire agreement "had the practical effect of cancelling the Paradyne employees' accrued pension benefits under their former AT&T pension plans" because they could only retain their accrued benefits if they returned to AT&T within six months.  Id.

      The plaintiffs, former Paradyne employees, alleged that the no-hire agreement was enacted "for the direct and immediate objective and with the singular purpose of eliminating the Paraydne pensions" in violation of Section 510.  Id.  In support of their claim, the plaintiffs relied on circumstantial evidence, including: (1) the close temporal proximity between the eight month restriction and the six month vesting period, (2) the role of Paradyne's Vice-President of Human Resources in formulating Texas Pacific Group's pension package, (3) a confidential memorandum between Lucent employees acknowledging that the no-hire agreement had the practical effect of cancelling their pension benefits, and (4) the economic benefits that Lucent and AT&T received as a direct result of the no-hire agreement.  Id. at 149.  The Third Circuit concluded that the plaintiffs had "presented sufficient circumstantial evidence of intent to interfere with their pension rights to create a genuine issue of material fact."  Id. at 150.

---

      ³In Eichorn, the Third Circuit also addressed plaintiffs' claims that certain restrictive covenants constituted unreasonable restraints on trade under Section 1 of the Sherman Anti-Trust Act, 15 U.S.C.S. § 1 (2004).  See Eichorn, 248 F.3d at 138-48.

In contrast to <u>Eichorn</u>, Farese cannot offer sufficient circumstantial evidence of intent to interfere with her pension rights to create a genuine issue of material fact. Significantly, Farese does not dispute that the Voluntary Offer did not exist at the time of her dismissal and has acknowledged that "discovery has produced no documentary evidence that Avaya's [Voluntary Offer] was conceived before June 6, 2001." Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp.") at 11; Pl. R. 56.1 Stmt. ¶ 60. These acknowledgments entirely undercut any contention that her supervisor, Dighe, dismissed her with the specific intention of depriving her of any future pension benefits. Therefore, Farese cannot establish a prima facie case under Section 510 of ERISA.

Ultimately, Farese is left to argue that summary judgment is inappropriate because the circumstances surrounding her discharge, including the timing of the development of the plan and certain discrepancies regarding Dighe's asserted justification for Farese's dismissal, "raise serious questions" or "strain credulity." Pl. Opp. at 11-16. These unsupported assertions alone are insufficient to create genuine issues of material fact sufficient to survive summary judgment. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." <u>Matsushita</u>, 475 U.S. at 586, n.12. In addition, the court notes that the record contains no evidence that Farese's discharge resulted in any significant savings to Avaya. Therefore, Farese's claim under Section 510 of ERISA must be dismissed.

b.   *Farese's Claim of Breach of Fiduciary Duty under ERISA*[4]

Further, Farese claims that Avaya breached their fiduciary duty under ERISA by failing to disclose or concealing the potential existence of the Voluntary Offer. In the absence of any evidence that the Voluntary Offer was even being contemplated at the time of her discharge, however, this claim must also be dismissed.

ERISA requires a fiduciary to "discharge his [or her] duties with respect to the plan solely in the interests of the participants and beneficiaries." 29 U.S.C. § 1104(a) (2004). Farese argues that in certain circumstances a fiduciary's silence in the face of a duty to disclose constitutes a breach of the duty of loyalty to the plan participants and beneficiaries. Pl. Opp. at 17 (citing Bixler v. Central Pa. Teamsters Health & Welfare Fund, 12 F.3d 1292, 1300 (3d Cir. 1993)). In the present case, however, Farese has failed to offer any evidence that anyone at Avaya, including Dighe, was even aware of the possibility of the Voluntary Offer when she was discharged on May 31, 2001. In fact, Farese has admitted that Avaya did not begin to consider offering enhanced pension benefits until Lucent's June 6, 2001 announcement of its own plan, six days after her discharge. Pl. R. 56.1 Stmt. at ¶ 60.

Farese clearly cannot prove that the Voluntary Offer was under "serious consideration" at the time of her discharge. "Serious consideration requires (1) a specific proposal (2) discussed for purposes of implementation (3) by senior management with the authority to implement the change." Fischer v. Philadelphia Elec. Co., 96 F.3d 1533, 1539 (3d Cir. 1994). Citing Fischer,

---

[4]For the purposes of this section, the Court assumes that Avaya would qualify as a fiduciary under Section 3(21)(A) of ERISA. See 29 U.S.C. § 1002 (2004). Defendants' argue that, under the present facts, Avaya should not be considered a fiduciary. The court finds it unnecessary to reach this issue and dismisses these claims on alternate grounds. See Section II.B.2.

Farese argues that the "serious consideration" theory should not be construed narrowly and embraces informal action as long as senior management is involved. Pl. Opp. at 20 (citing Fischer, 96 F.3d at 1540). However, even construing Farese's allegations in a light most favorable to her, she has not offered evidence sufficient to satisfy the "serious consideration" standard. In fact, the Third Circuit's holding in Fischer only serves to illustrate the transparency of Farese's argument. See Fischer, 96 F.3d at 1542 (holding that a company discussing alternative "retirement sweetener[s]" with a consultant did not begin "serious consideration" of a change in benefits until they held a corporate strategy meeting to discuss and chose amongst those options).

As Fischer clarifies, the "serious consideration" determination is highly fact-specific, turning not on any single factor, but rather requiring an analysis of each factor "to form a composite picture." Fischer, 96 F.3d at 1539. First, under the "specific proposal" factor, the proposal must be "sufficiently concrete to support consideration by senior management for the purpose of implementation." Id. at 1540. Here, Farese has acknowledged that "discovery has produced no documentary evidence that Avaya's [Voluntary Offer] was conceived before June 6, 2001." Pl. Opp. at 11; Pl. R. 56.1 Stmt. at ¶ 60. The second factor, "discussion for implementation," suggests that consideration of a plan does not become serious until discussions "turn[] to the practicalities of implementation." Id. at 1540. Even if Avaya had begun to consider a pension enhancement plan prior to Farese's discharge on May 31, which it had not, Farese certainly has not offered evidence that the plan was ripe for implementation at that time. Finally, the third factor requires that senior management has addressed the issue before it can be deemed under serious consideration. Farese has not offered any evidence that Avaya

management considered enhanced pension benefits prior to Lucent's June 6, 2001 announcement. Pl. R. 56.1 Stmt. at ¶ 60.[5]

It is clear, therefore, that Farese cannot meet her evidentiary burden for demonstrating "serious consideration." Instead, Farese relies on the argument that, "[d]espite the absence of "smoking gun" evidence, it remains impossible to believe that a multi-national corporation the size of Avaya implemented the [Voluntary Offer] in less than two weeks time." Pl. Opp. at 20. Even drawing all reasonable inferences in favor of Farese, such unsupported conjecture is insufficient to create a genuine issue of material fact to avoid summary judgment. Farese has failed to come forward with any evidence that Avaya intentionally withheld any information regarding enhanced pension benefits or was even considering offering different benefits prior to her discharge. Therefore, Farese's claim that Avaya breached their fiduciary duty under ERISA must be dismissed.

        2.     <u>Farese's State Law Wrongful Discharge and Breach of The Implied Covenant of Good Faith and Fair Dealing Claims</u>

          *a.*    *ERISA Preemption*

Under ERISA, Farese's state law claims are preempted to the extent they "relate to an employee benefit plan" covered by the statute. See 29 U.S.C. § 1144(a) (2004). ERISA Section 514 broadly preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by the statute. Id. This provision is "one of the most sweeping preemption provisions ever contained in any federal program." Nolan v. Otis Elevator Co., 102

---

[5]Because Farese's "serious consideration" theory is unavailing, this court need not reach the Defendants' argument that the "serious consideration" theory is unavailable when a plaintiff's termination of employment is involuntary. Def. Br. at 13.

N.J. 30, 38, cert. denied, 479 U.S. 820 (1986). "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such plan." Shaw v. Delta Airline, Inc., 463 U.S. 85, 96-97 (1983).

In Ingersoll-Rand v. McLendon, 498 U.S. 133 (1990), the Supreme Court held that a state law claim alleging that the employer had a "pension-defeating motive" clearly "'relate[s]' to' an ERISA-covered plan within the meaning of § 514(a), and is therefore preempted." McLendon, 498 U.S. at 140. The McLendon court also held that "[e]ven if there were no express pre-emption in this case, the . . . cause of action would be preempted because it . . . falls squarely within the ambit of ERISA § 510." Id. at 142. Here, to the extent that Farese's state law wrongful discharge and breach of the implied covenant of good faith and fair dealing claims hinge on her allegation that Avaya terminated her to avoid paying enhanced pension benefits, they are expressly preempted by Section 514(a) and fall squarely within the ambit of ERISA Section 510. Thus, Farese's state law claims are preempted to the extent they "relate to" her claim that Avaya had a "pension-defeating" motive.

                    b.      *Farese's Implied Contract Claims*

Farese's remaining state law claims are based on the contention that certain Avaya employee manuals created implied contracts guaranteeing her certain protections that she was not afforded before her discharge.[6] It is well-established in New Jersey that an at-will employee can be fired for a good cause, bad cause, or no cause at all. See Woolley v. Hoffman-LaRoche, Inc., 99 N.J. 284, 309 (1985). In certain circumstances, however, an at-will employee may be entitled

---

[6] These claims are not preempted because they do not "relate to" Avaya's alleged "pension-defeating motive."

13

to further protection. In Woolley, the New Jersey Supreme Court held that termination procedures set forth in employment manuals can become contractually enforceable. See id. at 1264. The determination whether an employment manual creates an implied contract must be made on a case-by-case basis by examining the reasonable expectations of the employee. See id. at 1264-65; see also Jackson v. Georgia Pacific Corp., 296 N.J. Super. 1, 12 (App. Div. 1996), cert. denied, 149 N.J. 141 (1997).

Farese could not have reasonably expected any additional protection in light of the clear and conspicuous disclaimers in the Avaya documents she relies upon. In Nicosia v. Wakefern Food Corp., 643 A.2d 554, 559-62 (N.J. 1994), the New Jersey Supreme Court clarified what constitutes a valid disclaimer. The two elements of a valid disclaimer are: (1) an "appropriate statement," meaning that the "language . . . must indicate in straightforward terms, that the employee is subject to discharge at will," and (2) "prominence," meaning that the language or text of the disclaimer is "set off in a way to attract attention." Id. at 560-61 (citations omitted). In the present case, Avaya's internal documents contained disclaimers sufficiently clear and conspicuous to satisfy the Nicosia standard. Pl. R. 56.1 Stmt. at ¶ 77, 78, 79, 80.

For example, Farese claims she should have been awarded benefits under a "force management package," as described in a document entitled "U.S. Force Management Program (FMP) Employee Communication Package for Salaried Employees." Id. at ¶ 77. That document contains multiple disclaimers including the following language, set out in bold, in the Table of Contents:

> THIS DOCUMENT, LIKE ALL AVAYA PLANS, PERSONNEL POLICIES OR
> PRACTICES, IS NOT A CONTRACT OF EMPLOYMENT.  IT IS NOT
> INTENDED TO CREATE, AND IT SHOULD NOT BE CONSTRUED TO
> CREATE, ANY CONTRACTUAL RIGHTS, EITHER EXPRESS OR IMPLIED,

14

> BETWEEN ANY PARTICIPATING COMPANY AND ITS EMPLOYEES. THE PRACTICES AND PROCEDURES DESCRIBED IN THIS DOCUMENT MAY BE CHANGED, ALTERED, MODIFIED OR DELETED AT ANY TIME, WITH OR WITHOUT PRIOR NOTICE.

Id. In addition, as a manager in Avaya's Human Resources Department, Farese has acknowledged that not only was she aware that her own Human Resources Department issued documents containing such language, but that she personally worked with an Avaya document containing similar language under the topic heading, "What Every Employee Should Know." Id. at ¶ 89-91.

Therefore, Farese could not have reasonably expected that any Avaya plan, policy or manual guaranteed her any additional rights. Further, Farese's argument that Avaya's routine course of dealing created reasonable expectations is insufficient given the clarity and prominence of the disclaimers. See e.g. Jackson v. Georgia-Pacific Corp., 296 N.J. Super. at 16 (holding that in light of a disclaimer "[n]o reasonable employee could fail to understand that the manual was not intended to change the employer's right to terminate its employees with or without cause."). Accordingly, Farese's wrongful discharge and breach of the implied covenant of good faith and fair dealing claims are dismissed.

### E. Defendants Are Not Entitled to an Award of Fees

In determining whether the Defendants' are entitled to an award of fees, this court must consider five factors: (1) the offending party's culpability or bad faith; (2) the ability of the offending party to satisfy an award of attorneys' fees; (3) the deterrent effect of an award; (4) the benefit conferred upon members of the pension as a whole; and (5) the relative merits of the parties' positions. Ursic v. Bethlehem Mines, 719 F.2d 670, 673 (3d Cir. 1983). This Court does not find culpability or bad faith on Farese's part that would warrant an award of fees and has not

been presented with sufficient evidence of her ability to satisfy such fees. Although her position lacks merit and an award of fees would benefit the Plan, this is not a bad faith claim and the concept of deterrence does not militate in favor of an award. Considering all of the basic factors, Defendants' request for costs is denied.

**II.  CONCLUSION**

  For the reasons discussed above, Defendants' motion for summary judgment and for attorneys' fees is granted in part and denied in part.  An appropriate form of order is filed herewith.

                <u>    s/ Garrett E. Brown, Jr.        </u>
                GARRETT E. BROWN, JR., U.S.D.J.